FILED
 2012 Mar-30  PM 03:12
   U.S. DISTRICT COURT
       N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| **DR. ARTURO J. OTERO,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) CASE NO.  7:10-CV-2554-SLB |
| | ) |
| **UNUM LIFE INSURANCE COMPANY** | ) |
| **OF AMERICA,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION

This case is presently pending before the court on plaintiff's Motion for Summary Judgment, (doc. 23); defendant's Motion for Judgment on the Administrative Record, or, alternatively, for Summary Judgment, (doc. 25); and its Motion to Strike Exhibits Submitted by Plaintiff, (doc. 32). Plaintiff alleges that defendant has wrongfully denied him ERISA benefits under a long-term disability policy. Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that plaintiff's Motion for Summary Judgment, (doc. 23), is due to be denied, and defendant's Motion for Judgment on the Administrative Record or Summary Judgment, (doc. 25), and Motion to Strike, (doc. 32), are due to be granted.

This case arises from the denial/termination of long-term disability benefits.  Dr. Otero, a neurologist, suffers from atrial fibrillation, which causes his heart to race under stress and when he is deprived of sleep.  This prevents him from working as a neurologist,

because he cannot take night call or work 40 hours a week. He currently works four days a week for four hours a day.

Defendant's vocational expert [VE] determined that plaintiff could work as a insurance physician, a peer review physician, and a medical file review physician. Based on the rate of pay for these positions, he could make $10,000 a month, the amount of his disability benefit, in less than 20 hours of work a week. (*See* doc. 17-4 at 5-6; doc. 35-23 at 105-106 [sealed].) Under the terms of the policy, "After 24 months of payments, [participants] are disabled when [defendant] determines that[,] due to . . . sickness or injury, [participants] are unable to perform the duties of any **gainful occupation** for which [they] are reasonably fitted by education, training or experience." (Doc. 28 at 25 [emphasis in original].) "**GAINFUL OCCUPATION** means an occupation that is or can be expected to provide you with an income at least equal to your gross disability payment within 12 months of your return to work." (*Id*. at 26 [emphasis in original].) Under the policy, defendant "has discretionary authority to determine [participants'] eligibility for benefits and to interpret the terms and provisions of the policy." (*Id*. at 19.) Defendant found plaintiff was not disabled under the terms of the policy. (Doc. 17-4 at 3.)

Plaintiff filed a Complaint alleging that defendant had wrongfully denied and/or terminated his claim for long-term disability benefits. He argues, *inter alia*, that he is not qualified for the insurance physician and review physician positions because he is not board

certified in neurology. However, to establish this fact he relies on evidence that is not in the administrative record.

The Eleventh Circuit has established the following regarding the district court's review of a decision to deny ERISA benefits:

> Review of the plan administrator's denial of benefits is limited to consideration of the material available to the administrator at the time it made its decision. *See Jett v. Blue Cross & Blue Shield of Ala., Inc.*, 890 F.2d 1137, 1140 (11th Cir. 1989). Whether the administrator's decision was either *de novo* correct or reasonable under this Circuit's *Williams* framework is a question of law.
>
> ERISA itself provides no standard for courts reviewing the benefits decisions of plan administrators or fiduciaries. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989). As a result, and based on the Supreme Court's guidance in *Firestone* and *Glenn*, see *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008), we have established a multi-step framework to guide courts in reviewing an ERISA plan administrator's benefits decisions. The first five steps have remained unchanged since we established the framework in *Williams*. *See Williams v. BellSouth Telecomms., Inc.*, 373 F.3d 1132, 1137-38 (11th Cir. 2004), *overruled on other grounds by Doyle v. Liberty Life Assurance Co. of Boston*, 542 F.3d 1352 (11th Cir. 2008). But the sixth step listed below reflects a more recent change based on *Glenn*. *See* 128 S.Ct. at 2351; *Doyle*, 542 F.3d at 1359-60 (modifying the sixth step's "heightened" review and shifting the burden of proof about the influence of a conflict of interest from the administrator to the prospective beneficiary).
>
> For a court reviewing a plan administrator's benefits decision, the present *Williams* test goes this way:
>
> (1) Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.

(2)  If the administrator's decision in fact is "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

(3)  If the administrator's decision is "*de novo* wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

(4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

(5) If there is no conflict, then end the inquiry and affirm the decision.

(6) If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.

*See Capone*, 592 F.3d at 1195.

     A pertinent conflict of interest exists where the ERISA plan administrator both makes eligibility decisions and pays awarded benefits out of its own funds. *See Glenn*, 128 S. Ct. at 2348. Where a conflict exists and a court must reach step six, "the burden remains on the plaintiff to show the decision was arbitrary; it is not the defendant's burden to prove its decision was not tainted by self-interest." *Doyle*, 542 F.3d at 1360. The effect that a conflict of interest will have within the *Williams* analysis in any given case will vary according to the severity of the conflict and the nature of the case: we look to the conflict's "inherent or case-specific importance." *Glenn*, 128 S. Ct. at 2351-52.

     Even where a conflict of interest exists, courts still "owe deference" to the plan administrator's "discretionary decision-making" as a whole. *Doyle*, 542 F.3d at 1363; *see also Glenn*, 128 S. Ct. at 2353 (Roberts, C.J., concurring in part and concurring in the judgment)(noting the "deference owed to plan administrators when the plan vests discretion in them").

*Blankenship v. Metropolitan Life Ins. Co.*, 644 F.3d 1350, 1354-55 (11th Cir. 2011)(footnotes and parallel citations omitted). "If the arbitrary and capricious standard applies, then the Record ***must not be supplemented***, because 'the function of the court is to determine whether there was a reasonable basis for the [claims] decision, based upon the facts as known to the administrator at the time the decision was made.'" *Ray v. Sun Life & Health Ins. Co.*, 752 F. Supp. 2d 1229, 1233 (N.D. Ala. 2010)(quoting *Glazer v. Reliance Standard Life Ins. Co.*, 524 F.3d 1241, 1246 (11th Cir. 2008))(emphasis added; original emphasis deleted), *aff'd* 443 Fed. Appx. 529 (11th Cir. 2011).

Plaintiff has presented evidence that the positions cited by the VE are not available at the companies the VE contacted to a physician who is not board certified. However, this evidence is not part of the administrative record. Therefore, defendant's Motion to Strike will be granted and the court has not considered any evidence submitted by plaintiff that is not part of the administrative record.

Considering the administrative record, the court finds that defendant's decision to deny plaintiff long-term disability benefits was not *de novo* wrong. The VE reported to defendant that, despite his limitations, plaintiff could earn the equivalent of his long-term benefits performing other work. Although plaintiff has argued that the VE's report is inaccurate, nothing in the administrative record indicates that defendant had any reason to know or suspect that VE's report was inaccurate and that plaintiff could not perform the jobs as reported by the VE. Considering only "the material available to [defendant] at the time

it made its decision" to deny plaintiff's claim for long-term disability benefits, the court finds that defendant's decision was not *de novo* wrong. *Blankenship*, 644 F.3d at 1354. Therefore, its Motion for Judgment on the Administrative Record will be granted.

## CONCLUSION

For the foregoing reasons, the court is of the opinion that there are no material facts in dispute and defendant is entitled to judgment as a matter of law. An Order denying plaintiff's Motion for Summary Judgment, (doc. 23), and granting defendant's Motion for Judgment on the Administrative Record, (doc. 25), and its Motion to Strike Exhibits Submitted by Plaintiff, (doc. 32), will be entered contemporaneously with this Memorandum Opinion.

**DONE**, this 30th day of March, 2012.

*/s/ Sharon Lovelace Blackburn*
SHARON LOVELACE BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE